IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCSW, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 15-504-LPS |
| | ) |
| TEN: THE ENTHUSIAST NETWORK MAGAZINES, LLC and SOURCE INTERLINK MAGAZINES, LLC, | ) |
| | ) |
| Defendants. | ) |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS**

ROSS ARONSTAM & MORITZ LLP
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com

ZUKERMAN GORE BRANDEIS & CROSSMAN, LLP
John K. Crossman
Frank C. Welzer
Eleven Times Square
New York, New York 10036
(212) 223-6700
fwelzer@zukermangore.com
jcrossman@zukermangore.com

*Counsel for Defendant TEN: The Enthusiast Network Magazines, LLC*

Dated:  July 24, 2015

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

PROCEDURAL HISTORY......................................................................................................3

THE FACTS ALLEGED..........................................................................................................3

    The License Agreement. ...................................................................................................4

        (1)    SCSW Agreed That TEN Owns The Mark..................................................4

        (2)    SCSW Agreed That TEN Owns All Rights Associated With The Mark. ...4

        (3)    SCSW Agreed Not To Register Any Associated Marks. ............................5

        (4)    SCSW Agreed Not to Contest TEN's Rights. .............................................5

        (5)    SCSW Agreed That After Termination All Rights Remain TEN's.............6

        (6)    SCSW Agreed, Upon Termination, To Cease All Use Of The Mark..........6

        (7)    SCSW Agreed That TEN Can Protect Its Mark. .........................................6

    After Entering Into The Agreement, SCSW Wrongfully Misappropriates The Mark. .......7

    TEN's Complaint Against SCSW.....................................................................................7

    SCSW's Complaint Against TEN.....................................................................................7

LEGAL ARGUMENT..............................................................................................................8

    A.    Standard ...............................................................................................................8

    B.    SCSW's Claims Are Redundant ........................................................................10

    C.    SCSW's Claims Are Barred by Contract...........................................................11

        1.    SCSW's Tortious Interference Claim Is Barred ......................................12

        2.    SCSW's Fraud Claim Is Barred by Contract ...........................................13

    D.    SCSW's Fraud Claims Are Barred by Rule 9(b) ...............................................14

CONCLUSION.......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Aldens v. Packel*,
    524 F.2d 38 (3d Cir. 1975) .................................................................................................. 10

*Amiot v. Kemper Ins. Co.*,
    122 Fed. Appx. 577 (3d Cir. 2004) ...................................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 8-9

*CSH Theatres, LLC v. Nederlander of San Francisco Assoc.*,
    2015 WL 1839684 (Del. Ch. 2015) .................................................................................. 14

*GSC Partners CDO Fund v. Washington*,
    2004 WL 1087376 (3d Cir. May 17, 2004) ...................................................................... 14

*H-M Wexford LLC v. Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003) ........................................................................................... 13

*In re Aphton Corp.*,
    2010 WL 308830 (Bankr. D. Del. Jan. 27, 2010) ............................................................... 9

*In re Friedman's Inc.*,
    2011 WL 2728351 (Bankr. D. Del. July 12, 2011) ............................................................ 9

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987) ........................................................................................... 12

*Laifail, Inc. v. Learning 2000, Inc.*, 2002 WL 31667861
    (D. Del. 2002) ...................................................................................................................... 9

*Matter of L.B. Trucking, Inc.*,
    1994 WL 43427 (Bankr. D. Del. Feb. 3, 1994) ................................................................ 12

*NACCO Industries, Inc. v. Applica Inc.*,
    997 A.2d 1 (Del. Ch. 2009) ............................................................................................... 12

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................................ 9

*Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*,
    2010 WL 3023402 (D. Del. July 30, 2010) ...................................................................... 10

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    1993 WL 230182 (3d Cir. June 30, 1993) ........................................................................ 9

*Platform-A Inc. v. Unique Vacations, Inc.*,
    2009 WL 5067633 (D. Del. 2009) ................................................................................. 14

*Principal Life Ins. Co. v. DeRose*,
    2009 WL 4061366 (M.D. Pa. Nov. 23, 2009) ................................................................ 10

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*,
    2009 WL 4800567 (D. Del. Dec. 11, 2009) ................................................................... 10

*Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*,
    2002 WL 1558382 (Del. Ch. 2002) ................................................................................ 13

*Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*,
    329 B.R. 438 (Bankr. D. Del. 2005) ................................................................................ 9

*Stubbs v. Bank of America Corp.*,
    2010 WL 659911 (D. Del. 2010) ................................................................................... 14

*Wavedivision Holdings, LLC v. Highland Capital Management L.P.*,
    2001 WL 5314507 (Del. Sup. Ct. 2011) ........................................................................ 12

*Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.*,
    2013 WL 247041 (D. Del. Jan. 23, 2013) ........................................................................ 3

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................ 3, 9, 14

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 8, 9

Defendant TEN: The Enthusiast Network Magazines, LLC ("TEN"), formerly known as Source Interlink Magazines, LLC ("Source"), submits this Opening Brief in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

**PRELIMINARY STATEMENT**

This case arises out of a contract dispute between TEN, on the one hand, and SCSW, Inc. a/k/a SCSW LLC ("SCSW") on the other, regarding SCSW's use of TEN's trademark "SUPER CHEVY." TEN and SCSW were parties to a written license agreement (the "Agreement"), which granted SCSW a limited right to use the mark SUPER CHEVY (the "Mark") for automotive events branded as "SUPER CHEVY SHOWS" at racetracks in the United States. The Agreement was terminated, but SCSW continued to use the Mark without permission even after termination and despite TEN's demand to cease and desist. Consequently, TEN sued SCSW in California for breach of the Agreement, trademark infringement, unfair competition and false advertising. Shortly thereafter, that same day, SCSW countered by filing this separate lawsuit in Texas against TEN. Both cases were transferred to this Court.

SCSW's Complaint should be dismissed for the following three reasons.

First, all of the claims in SCSW's action will be litigated, and resolved, in TEN's first-filed Complaint in the related action entitled *TEN: The Enthusiast Network Magazines, LLC v. SCSW, LLC*, U.S.D.C., D. Del., C.A. No. 15-437-LPS (the "Main Action"). SCSW's claims are the mirror image of TEN's claims. In both cases, the claims center on the right to use the trademark SUPER CHEVY. In its action, TEN alleges claims against SCSW under the Lanham Act, unfair competition laws, and breach of contract, all arising from SCSW's use of the mark SUPER CHEVY. TEN seeks an injunction barring SCSW from using the Mark. SCSW seeks a

---

[1] SCSW mistakenly named as a separate defendant "Source Interlink Magazines, LLC," which is the same legal entity as TEN. Source changed its name to TEN in 2014.

declaration that *it* and not TEN is the owner of the rights for the Mark. SCSW's claims should be dismissed as redundant of the issues that will necessarily be adjudicated under TEN's claims in the Main Action.

Second, SCSW's second and third causes of action are precluded by the terms of the license Agreement attached to SCSW's Complaint. (*See* Exh. B to SCSW's Complaint, which is attached to the accompanying Frank Welzer Declaration as Exh. 1). Specifically, SCSW's second cause of action for tortious interference with contract is barred because the Agreement – an express contract – clearly authorized TEN to take the supposedly unlawful actions, and the alleged interference was not *interference* at all – it was *performance* of the conduct. Moreover, even if the conduct were considered interference, it would have been justified, permitted and not tortious. Likewise, SCSW's third cause of action for fraudulent inducement is barred by the terms of the Agreement. SCSW alleges that it was fraudulently induced to enter into the Agreement because TEN supposedly represented it had federally registered the mark SUPER CHEVY. But the Agreement says nothing about any mark having already been registered; to the contrary, it states that TEN "*shall* have the *right*" to register. It would make no sense to give TEN the right to *seek* registration if TEN had already *obtained* such registration. The express terms of the Agreement thus directly contradict SCSW's claim. Furthermore, the Agreement contains an integration clause which, together with the provision concerning TEN's right to register, demonstrates that SCSW had agreed that it was not relying on any statement about the Mark already having been registered in entering into the Agreement. Even if such a representation was made, which it was not, SCSW could not have reasonably relied on it because registration of trademarks is publicly available information that SCSW could have checked before entering into the Agreement.

Third, SCSW's third cause of action for "fraud and fraudulent inducement" also fails because it is not pled with the specificity required under Rule 9(b) . SCSW alleges only a vague representation that TEN "owned a federally registered trademark." SCSW does not allege who made the representation, when it was made, where it was made, or how it was made (orally or in writing), as required to state a claim based in fraud. SCSW's fraud-based claim fails for this separate and independent reason.

## PROCEDURAL HISTORY

On March 27, 2015 at 4:42 p.m. Eastern Time, TEN filed its Complaint in the Main Action against SCSW (the "TEN Complaint") in the United States District Court for the Central District of California.

On March 27, 2015 at 5:50 p.m. Eastern Time, shortly after TEN filed its Complaint in California, SCSW filed its mirror image Complaint against TEN in the District Court of McLellan County, Texas. On May 1, 2015, TEN removed the SCSW Complaint to Federal Court. On May 13, TEN filed a motion to transfer the case to the District of Delaware. SCSW did not oppose the motion. On June 3, 2015, TEN's Complaint was transferred to this Court, following an unopposed motion to transfer. (D.I. 25 in the Main Action). On June 16, 2015, SCSW's Complaint was transferred to this Court.

The law is clear that the first-filed case takes precedence. *Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.*, 2013 WL 247041, at *5 (D. Del. Jan. 23, 2013) (applying first-filed rule and dismissing second-filed action).

## THE FACTS ALLEGED

SCSW is a Delaware LLC that does business with various racetracks located in the United States. SCSW alleges that it entered into an agreement with Roger Gustin in 2009 concerning an event (the "Racing Event"). Thereafter, SCSW entered into a license agreement

3

with TEN (f/k/a Source), to use the mark SUPER CHEVY in connection with events to be presented by SCSW, which events, pursuant to the license, would be branded as SUPER CHEVY SHOWS.  SCSW alleges that it entered into the Agreement in November 2009, based "in large part" on an unspecified representation to the effect that TEN owned a federally registered trademark in the phrase SUPER CHEVY.  SCSW Complaint, Exh. 1 to Welzer Decl., at ¶ 9.

**The License Agreement.**

The Agreement contains seven key provisions that conclusively demonstrate the defects in SCSW's claims to the mark SUPER CHEVY:

**(1)     SCSW Agreed That TEN Owns The Mark.**

The Agreement defines the "Licensed Property" as "the following trademark owned by Licensor:  SUPER CHEVY."  Agreement, Exh. B to SCSW Compl., at p. 1, § 1(a).

In section 11 of the Agreement, titled "Ownership of Intellectual Property Rights," SCSW agreed that TEN owns the mark SUPER CHEVY:

> Licensor owns all right, title, and interest, including all Intellectual Property Rights, in and to the Licensed Property.

Agreement at p. 10, § 11(a).  The Agreement defines Intellectual Property Rights as "all rights arising or protectable under the patent, trademark, copyright, trade secret, or similar laws of the United States…."  Agreement at p. 1, § 1(d).

**(2)     SCSW Agreed That TEN Owns All Rights Associated With The Mark.**

In section 11 of the Agreement, SCSW agreed that all intellectual property rights and goodwill associated with the mark SUPER CHEVY belong exclusively to TEN:

> Licensor recognizes the great value of the good will associated with the Licensed Property and acknowledges that *all Intellectual Property Rights associated therewith* and good will attached thereto *belongs exclusively to Licensor*, that the

4

> Licensed Property has secondary meaning the minds of the public, and that all use of the Licensed Property will inure to the benefit of Licensor.

Agreement, at pp. 10-11, § 11(b)(i) (emphasis added).

### (3)  SCSW Agreed Not To Register Any Associated Marks.

In section 11 of the Agreement, SCSW agreed to not take any action to register or attempt to register any marks associated with or resulting from the Licensed Events: "Licensee shall take no action to register or attempt to register any trademarks, service marks or other identifiers of source associated with the Licensed Events." Agreement, Exh. B to SCSW's Compl., at p. 11, § 11(b)(ii).[2]

### (4)  SCSW Agreed Not to Contest TEN's Rights.

In section 11 of the Agreement, SCSW agreed to not take any action to challenge or contest TEN's intellectual property rights:

> Licensee agrees that *it will not*, during the term of this Agreement or thereafter, *challenge or contest Licensor's Intellectual Property Rights* in and to the Licensed Property, or attack the validity of this Agreement.

Agreement at pp. 10-11, § 11(b)(i) (emphasis added).

> In any dispute between the Parties, Licensee *shall not contest* the validity of any trademarks, service marks or other identifiers of source associated with the Licensed Events, and Licensee *shall take no action* to impair or dilute the value of any trademarks, service marks or other identifiers of source associated with the Licensed Events.

*Id.* at p. 11, § 11(b)(ii) (emphasis added). This lawsuit by SCSW is an express violation of these duties.

---

[2]  The Agreement defines the "Licensed Events" as "the automotive events branded as SUPER CHEVY SHOWS as conducted by [SCSW] in accordance with the terms and conditions of this Agreement." Agreement at p. 1, § 1(a).

5

**(5) SCSW Agreed That After Termination All Rights Remain TEN's.**

In section 11 of the Agreement, SCSW agreed that after termination of the Agreement, all rights shall continue to belong to TEN, as the Licensor:

> Following the Term, all Licensed Property *shall continue to belong to Licensor*. Nothing herein shall be construed as conveying or transferring ownership to Licensee in the Licensed Property or the Magazines.

Agreement at p. 10, § 11(a) (emphasis added).

**(6) SCSW Agreed, Upon Termination, To Cease All Use Of The Mark.**

In section 12 of the Agreement, SCSW agreed to cease using the Mark, and to assign all domain names containing the Mark, to TEN upon termination of the Agreement:

> <u>Effect of Termination</u>. Upon the expiration or termination of this Agreement for any reason: (1) Licensee *shall immediately cease all use* of the Licensed Property and *shall have no further authority* to promote, advertise, conduct, administer, or otherwise operate the Licensed Events; and (2) Licensee *shall assign and transfer* to Licensor any domain name registered by Licensee bearing or containing any trademark or service mark of Licensor.

Agreement at p. 12, § 12 (j) (emphasis added). The Agreement expressly required SCSW to create an event website: "Licensee, at its own expense, shall build a separately-branded web site with the look and feel of Licensor's Super Chevy web site." (Agreement at p. 5, § 4(b)). Upon termination, section 12(j) of the Agreement required SCSW to cease use of the website and to assign it to TEN.

**(7) SCSW Agreed That TEN Can Protect Its Mark.**

In section 11 of the Agreement, SCSW agreed that TEN had the right to seek to protect its marks:

> With respect to the Licensed Property, Licensor *shall have the right*, at its own expense and discretion, *to seek protection for*, register, and perfect *all Intellectual Property Rights* arising out of or relating to the Licensed Property or the Licensed Event.

Agreement at p. 10, § 11(a) (emphasis added).

6

**After Entering Into The Agreement, SCSW Wrongfully Misappropriates The Mark.**

SCSW alleges that after entering into the Agreement, SCSW learned that TEN had not filed a trademark application. Allegedly in order "to further protect the Racing Event," in 2012, SCSW filed an application with the Texas Secretary of State and secured a trademark for "Super Chevy Show" and "SuperChevy.comShow." SCSW Compl. at ¶ 10. SCSW does not allege that in seeking this registration, it notified the Texas Secretary of State concerning TEN's superior rights in the Mark.

Ostensibly subject to the license Agreement, SCSW put on the Racing Event – for years. Then, in late 2013, TEN began to experience financial difficulty. SCSW Compl. at ¶ 11. SCSW alleges that by mid-to-late 2014, TEN had failed to provide services under the Agreement. *Id.* at ¶ 12. SCSW alleges that on or about October 2, 2014, SCSW notified TEN that due to material breaches, SCSW was terminating the License Agreement. *Id.* at ¶ 13. Although these allegations are assumed to be true for this motion, they would be vigorously disputed in subsequent litigation.

**TEN's Complaint Against SCSW.**

TEN's Complaint alleges causes of action against SCSW for: (1) trademark infringement, (2) breach of contract, (3) unfair competition/false designation of origin under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. as amended (the "Lanham Act"), and (4) false advertising. TEN seeks preliminary and permanent injunctive relief and damages. TEN Complaint, Exh. 2 to Welzer Decl., at ¶¶ 1, 3.

**SCSW's Complaint Against TEN.**

SCSW's Complaint alleges three counts: (1) request for declaratory judgment, (2) tortious interference with Super Chevy Show, and (3) fraud and fraudulent inducement.

In its first claim for declaratory judgment, SCSW asks the Court to declare, pursuant to Chapter 37 of the Texas Civ. Prac. & Rem. Code, Uniform Declaratory Judgments Act, that SCSW is the owner and registered holder of legal rights under the Texas Trademark Act of the trademarks: Super Chevy Show and Superchevyshow.com.  SCSW Compl. at ¶ 18.  SCSW asks the Court to declare that neither TEN nor Source has registered, either at the State or Federal level, any trademark for SUPER CHEVY.  *Id.* at ¶ 19.

In its second claim for tortious interference, SCSW alleges that TEN's intentional conduct is the sole reason that its contracts with Masters Entertainment Group, Velocity Network and General Motors were either modified or terminated.  *Id.* at ¶ 23.

In its third claim for "fraud and fraudulent inducement," SCSW alleges that "Source" knowingly and intentionally made false representations that it owned a federally registered trademark in the phrase "Super Chevy" when in fact it did not and does not hold a statutory or registered trademark.  *Id.* at ¶ 25.  SCSW seeks repudiation of the Agreement, and a finding that the Agreement is void as it was "incurred by fraud."  *Id.* at ¶ 26.  SCSW seeks reimbursement of amounts paid and exemplary damages.  *Id.* at ¶¶ 27-28.

SCSW's Complaint includes a Fourth Cause of Action for "Damages," a Fifth for "Condition Precedent," and a Sixth for "Attorney's Fees" under section 38.001, et seq. of the Texas Civ. Prac. & Rem. Code.  SCSW Compl. at ¶¶ 29-31. These are remnants of Texas pleading and not stand-alone causes of action, and TEN moves to dismiss these along with the substantive counts.

## LEGAL ARGUMENT

**A.    Standard**

A complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face" must be dismissed under Rule 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

8

570 (2007). The *Twombly* "plausibility standard" demands "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot survive a Rule 12(b)(6) motion by pleading "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (*quoted* in *Twombly*, 550 U.S. at 555). Courts should reject "unsupported allegations," "bald assertions," or "legal conclusions." *Amiot v. Kemper Ins. Co.*, 122 Fed. Appx. 577, 579 (3d Cir. 2004).

For causes of action for fraud and fraudulent inducement, the heightened pleading standard of Rule 9(b) applies. When pleading fraudulent inducement the circumstances must be stated with particularly: "[t]his means the who, what, when, where and how: the first paragraph of any newspaper story." *Laifail, Inc. v. Learning 2000, Inc.*, 2002 WL 31667861, at *4 (D. Del. 2002).

To decide a motion to dismiss, courts generally consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 1993 WL 230182 (3d Cir. June 30, 1993). "[I]f the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint." *In re Friedman's Inc.*, 2011 WL 2728351, at n.23 (Bankr. D. Del. July 12, 2011), citing *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.),* 329 B.R. 438, 442 (Bankr. D. Del. 2005). *See also*, *In re Aphton Corp.*, 2010 WL 308830 (Bankr. D. Del. Jan. 27, 2010) (dismissing claims where "[t]he Court finds that the allegations in the Complaint are contradicted by the documents attached and incorporated therein").

### B. SCSW's Claims Are Redundant

In the Third Circuit, dismissal of a declaratory judgment counterclaim is appropriate "where it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim," and where "the prayer for declaratory relief is redundant and [would] bec[o]me moot upon disposition of the counterclaim." *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, 2010 WL 3023402, at *6 (D. Del. July 30, 2010) (dismissing counterclaim as redundant of count in the plaintiff's complaint), citing *Aldens v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975).

In *Penn Mutual*, the plaintiff-insurer sought a declaration that an insurance policy was void because it was issued in reliance on material misrepresentations. In turn, the counterclaimant sought a declaration that there was no basis for rescission of the policy. The Court held that a finding in plaintiff's favor "necessarily moots the declaration sought by Defendants" and dismissed the counterclaim. *Id.* at *6. *See also*, *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 2009 WL 4800567 (D. Del. Dec. 11, 2009) (where "counterclaim presents no unique issues of fact or law and should be dismissed as redundant"); *Principal Life Ins. Co. v. DeRose*, 2009 WL 4061366, at *4 (M.D. Pa. Nov. 23, 2009) ("mirror-image counterclaims serve no useful purpose … [N]ot only does the counterclaim, as pleaded, serve no purpose in this case, but its inclusion in the action needlessly creates the risk of procedural confusion").

Here, each of SCSW's claims should be dismissed because they will be resolved in the Main Action.

- In its first cause of action, SCSW seeks a declaration that it is "the owner and registered holder of legal rights under the Texas Trademark Act," that SCSW "is the sole owner of the following duly registered Texas Trademarks: (1) Super Chevy Show; and

(2) Superchevyshow.com," and that "neither Defendant in this case has registered, either at the State or Federal level, any trademark for SUPER CHEVY." *Id.* at ¶¶ 18-19.  This claim is redundant, however, because a finding in the Main Case that SCSW is unlawfully using the Mark would necessarily moot the declaration sought by SCSW.

- In its second cause of action, SCSW seeks damages for tortious interference, for TEN's alleged wrongful conduct in "communicat[ing] threats of legal action toward Discovery and/or Velocity and/or Masters," GM and Chevrolet.  SCSW Compl. at ¶¶ 21, 22.  This claim is redundant, however, as a finding in the Main Case that TEN is the owner of the Mark, and that SCSW has engaged in unfair competition and false advertising in its unauthorized use of the marks "to deceive and mislead the Track-owners, Velocity, members of the media, the trade, and the consuming public into assuming that [SCSW] is the owner…," "with the intent to induce the Track-owners, Velocity, media, trade, and the consuming public to enter into contracts with" SCSW, would necessarily moot this cause of action.  TEN Compl. at ¶¶ 71, 75, 76.

- In its third cause of action, SCSW alleges that TEN made "false representations includ[ing] that Source Interlink owned a federally registered trademark in the phrase 'SUPER CHEVY'" when, in fact, Source "did not then, nor does it today, hold any statutory or registered trademark" in SUPER CHEVY.  SCSW Compl. at ¶ 25.  This claim is redundant, however, as a finding in the Main Case that TEN owns the Mark and that SCSW has unlawfully used the Mark would necessarily moot this cause of action.

## C. SCSW's Claims Are Barred by Contract

"Delaware law generally elevates contract law over tort to allow parties to order their affairs and bargain for specific results, to the point where Delaware law enforces contractual provisions that eliminate the possibility of any tort liability short of actual fraud based on explicit

11

written contractual representation." *NACCO Industries, Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009).

### 1. SCSW's Tortious Interference Claim Is Barred

"For a plaintiff to recover for tortious interference with contractual relations, there must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) *without justification* (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987) (emphasis added).

"One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract … does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Restatement (Second) of Torts § 773 (1979). *See also*, *Wavedivision Holdings, LLC v. Highland Capital Management L.P.*, 2001 WL 5314507, at *11 (Del. Sup. Ct. 2011) (finding justification where defendant acted to protect financial interests); *Matter of L.B. Trucking, Inc.*, 1994 WL 43427 (Bankr. D. Del. Feb. 3, 1994) (same).

In its second cause of action, SCSW alleges that TEN tortiously interfered with SCSW's contracts with third-parties when SCSW allegedly communicated threats of legal action, which resulted in contracts being modified and one negotiation to cease. SCSW Compl. at ¶¶ 21-22. However, in the Agreement: (1) SCSW agreed that TEN owns all rights in the Mark SUPER CHEVY, (2) SCSW agreed not to attempt to register any marks associated with the Super Chevy Shows, (3) SCSW agreed that after termination of the Agreement, TEN would retain the Mark, (4) SCSW agreed not to challenge or contest TEN's Intellectual Property Rights, (5) SCSW agreed to cease use of the Licensed Property, and (6) SCSW agreed that TEN shall have the right

to protect its Intellectual Property Rights. Thus, per the Agreement, the alleged conduct cannot amount to tortious interference.

### 2. SCSW's Fraud Claim Is Barred by Contract

In its third cause of action, SCSW alleges that TEN fraudulently induced it to enter into the Agreement by "false representations including that Source Interlink owned a federally registered trademark in the phrase 'SUPER CHEVY'" when Source "did not then, nor does it today, hold any statutory or registered trademark…." SCSW Compl. at ¶ 25. However, SCSW specifically acknowledged and agreed that TEN had the *right* to register its Mark. Agreement at p. 10, § 11(a) ("Licensor shall have the right, at its own expense and discretion, to seek protection for, register, and perfect all Intellectual Property Rights arising out of or relating to the Licensed Property or the Licensed Event."). SCSW's acknowledgement that TEN had the *right* to register its Mark is contradicted by SCSW's allegation that it relied upon an express representation that the Mark was *already* registered.

Moreover, the Agreement contains an integration clause which provides that the Agreement "supersedes all prior written or oral agreements, statements or representations." Agreement at p. 13, § 17(a). In addition, SCSW agreed that it "will not … attack the validity of this Agreement." *Id.* at p. 11, § 11(b)(i). SCSW's claim that it was fraudulently induced to enter into the Agreement based upon representations that preceded the Agreement are barred for this separate and independent reason, as the integration clause, coupled with the provision acknowledging TEN's right to register, demonstrate that SCSW agreed that it was not relying on facts outside of the Agreement. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 142 (Del. Ch. 2003) (dismissing fraudulent inducement because there could be no justifiable reliance based on the integration clause); *Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *7 (Del. Ch. 2002) (dismissing fraudulent inducement claim based upon integration

13

clause).  Finally, even if the Agreement had not forestalled SCSW's efforts to plead fraud (and it does), SCSW could not have reasonable relied on a representation concerning the existence of a federal trademark because such information is publicly available, on the USPTO website: http://www.uspto.gov/trademark (last visited July 22, 2015).

**D.     SCSW's Fraud Claims Are Barred by Rule 9(b)**

"Under Federal Rule of Civil Procedure 9(b), '[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity.'"  *GSC Partners CDO Fund v. Washington*, 2004 WL 1087376 (3d Cir. May 17, 2004), citing Fed. R. Civ. P. 9(b).  Courts routinely dismiss fraudulent inducement claims where a plaintiff, like SCSW, fails to plead with the required specificity.  *Stubbs v. Bank of America Corp.*, 2010 WL 659911, at *4 (D. Del. 2010) (granting motion to dismiss fraudulent inducement claim where plaintiff failed to specify the employee who made the misrepresentation); *Platform-A Inc. v. Unique Vacations, Inc.*, 2009 WL 5067633, at *2 (D. Del. 2009) (granting motion to dismiss where fraudulent inducement claim contained no facts to support conclusory assertions); *CSH Theatres, LLC v. Nederlander of San Francisco Assoc.*, 2015 WL 1839684, at *22 (Del. Ch. 2015) (granting motion to dismiss fraudulent inducement claim where plaintiff failed to allege specific facts to show the speaker never intended to comply).

Here, SCSW fails to allege any of the "who, where, when, how" types of allegations that are typically found to sufficiently state a claim.  SCSW does not identify who made the purported representation.  SCSW does not allege how the representation was made, whether in writing or by word of mouth.  SCSW does not identify where, or when, the representation was made.  Instead, it merely alleges that TEN "knowingly and intentionally made" a false representation that it "owned a federally registered trademark in the phrase 'SUPER CHEVY.'" SCSW Compl. at ¶ 25.  That is it.  This is insufficient to state a claim under Rule 9(b).

14

## CONCLUSION

For the foregoing reasons, TEN requests that the Court dismiss plaintiff's complaint with prejudice, and grant such additional relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ROSS ARONSTAM & MORITZ LLP |
| *Of Counsel*: | /s/ Benjamin J. Schladweiler |
|  | David E. Ross (#5228) |
| Frank C. Welzer | Benjamin J. Schladweiler (#4601) |
| John K. Crossman | 100 S. West Street, Suite 400 |
| ZUKERMAN GORE BRANDEIS & CROSSMAN, LLP | Wilmington, DE 19801 |
| Eleven Times Square | (302) 576-1600 |
| New York, New York 10036 | dross@ramllp.com |
| (212) 223-6700 | bschladweiler@ramllp.com |
| fwelzer@zukermangore.com |  |
| jcrossman@zukermangore.com | *Counsel for Defendant TEN: The Enthusiast Network Magazines, LLC* |

Dated: July 24, 2015

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on July 24, 2015, a true copy of the foregoing *Opening Brief in Support of Motion to Dismiss* was served via electronic mail upon the following counsel of record:

John G. Day
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
jday@ashby-geddes.com

*Counsel for Plaintiff SCSW, LLC*

Andrew Kazin
Brian A. Lacoff
STAGG TERENZI CONFUSIONE & WABNIK
401 Franklin Avenue, Suite 300
Garden City, NY 11530
akazin@stcwlaw.com
blacoff@stcwlaw.com

*Counsel for Plaintiff SCSW, LLC*


 */s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)