IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCSW, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-504-LPS |
| v. | ) |
| | ) |
| TEN: THE ENTHUSIAST NETWORK | ) |
| MAGAZINES, LLC and SOURCE | ) |
| INTERLINK MAGAZINES, LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF SCSW, LLC'S ANSWERING BRIEF
<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | John G. Day (#2403) |
|  | Tiffany Geyer Lydon (#3950) |
| *Of Counsel:* | Andrew C. Mayo (#5207) |
|  | 500 Delaware Ave., 8th Floor |
| Andrew Kazin | P.O. Box 1150 |
| Brian A. Lacoff | Wilmington, DE 19899 |
| STAGG TERENZI CONFUSIONE & WABNIK | (302) 654-1888 |
| 401 Franklin Avenue, Suite 300 | jday@ashby-geddes.com |
| Garden City, NY 11530 | tlydon@ashby-geddes.com |
| (516) 812-4500 | amayo@ashby-geddes.com |
|  |  |
| Dated: August 21, 2015 | *Attorneys for SCSW, LLC* |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

The Super Chevy Show ..................................................................................................................1

The Super Chevy Show Marks .......................................................................................................2

ARGUMENT ...................................................................................................................................5

I.  SCSW PLEADS CLAIMS FOR DECLARATORY RELIEF,
    TORTIOUS INTERFERENCE WITH CONTRACT AND
    BUSINESS RELATIONS AND FRAUDULENT INDUCEMENT .................................5

    A.  SCSW States a Claim for Declaratory Relief ..........................................................6

    B.  SCSW States a Claim for Tortious Interference with
        Contract and Business Relations ..............................................................................7

    C.  SCSW Sufficiently Pleads Fraudulent Inducement .................................................9

II. SCSW'S CLAIMS ARE NOT MOOT ..............................................................................13

III. THE FIRST FILED RULE SHOULD NOT APPLY TO THE SCSW ACTION .............14

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Bayer Corp. v. Chiron Corp.*,
 2002 U.S. Dist. LEXIS 22938 (D. Del. Nov. 8, 2002) ..................................................11

*Berger v. Zeghibe*, 465 Fed. Appx.
 174 (3d Cir. 2012)..................................................................................................8, 11

*Buckley v. O'Hanlon*,
 2007 U.S. Dist. LEXIS 22211 (D. Del. Mar. 28, 2007) ..................................................10

*Carefirst of MD, Inc. v. Care First Transp., Inc.*,
 2002 U.S. Dist. LEXIS 22830 (D. Del. Nov. 1, 2002) .......................................................6

*Eastman Chem. Co. v. AlphaPet Inc.*,
 2011 U.S. Dist. LEXIS 152907 (D. Del. Dec. 29, 2011)..................................................15

*H-M Wexford LLC v. Encorp., Inc.*,
 832 A.2d 129 (Del. Ch. 2003)..............................................................................11, 12

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
 532 A.2d 983 (Del. Ch. 1987)......................................................................................9

*NACCO Indus., Inc. v. HB-PS Hlding Co., Inc.*,
 997 A.2d 1 (Del. Ch. 2009).........................................................................................9

*Penn Mutual Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*,
 2010 U.S. Dist. LEXIS 77334 (D. Del. July 30, 2010) .............................................13, 14

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*,
 674 F. Supp. 2d 562 (D. Del. 2009)..............................................................................13

*Progressive Int'l Corp. v. E.I. Du Pont De Nemours & Co.*,
 2002 Del. Ch. LEXIS 91 (July 9, 2002) ........................................................................12

*RCA Corp. v. Data Gen. Corp.*,
 1986 U.S. Dist. LEXIS 18486 (D. Del. Oct. 27, 1986) .....................................................9

*Schock v. Baker*,
 2010 U.S. Dist. LEXIS 94465(D. Del. Sept. 10, 2010) ...............................................5, 12

*Sevelle Indus. Mach. Corp. v. Southmost Mach. Corp.*,
 742 F.2d 786 (3d Cir. 1984)........................................................................................10

## TABLE OF AUTHORITIES
(continued)

**Cases**

Page(s)

*Southern Track & Pump, Inc. v. Terex Corp.*,
    722 F. Supp. 2d 509 (D. Del. 2010) .................................................................................10

*TSMC Tech., Inc. v. Zond, LLC*,
    2014 U.S. Dist. LEXIS 175201 (D. Del. Dec. 19, 2014) ...........................................14, 15

*TSMC Tech., Inc. v. Zond, LLC*,
    2015 U.S. Dist. LEXIS 1834 (D. Del. Jan. 8, 2015) ...........................................................6

*Tani v. FPL/Next Era Energy*,
    2013 U.S. Dist. LEXIS 105600 (D. Del. July 29, 2013) ....................................................9

*Travel Syndication Tech., LLC v. Fuzebox, LLC*,
    2012 U.S. Dist. LEXIS 73117 (D. Del. May 25, 2012) .....................................................7

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
    921 F. Supp. 2d 317 (D. Del. 2013) .................................................................................13

*Wavedivision Hldings, LLC v. Highland Cap. Mgmt L.P.*,
    2011 Del. Super. LEXIS 479 (Del. Sup. Ct. Oct. 31, 2011) ...............................................9

*W.L. Gore & Assocs. v. AGA Med. Corp.*,
    2012 U.S. Dist. LEXIS 36640 (D. Del. Mar. 19, 2012) .....................................................6

*Woodbolt Distrib., LLC v. Natural Alt. Int'l*,
    2013 U.S. Dist. LEXIS 8751 (D. Del. Jan. 23, 2013) .................................................14, 15

**Statutes and Rules**

28 U.S.C. § 2201(a)(2014) ...................................................................................................6

Federal Rule of Civil Procedure 9(b) ................................................................................10

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1

Federal Rule of Civil Procedure 42(a) ..............................................................................15

Plaintiff SCSW, LLC ("SCSW"), by its attorneys Ashby & Geddes, submits this Memorandum of Law in opposition to defendants TEN: The Enthusiast Network Magazines, LLC ("TEN") and Source Interlink Magazines, LLC's ("Source Interlink") motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint.

## PRELIMINARY STATEMENT

In this action, SCSW, the undisputed owner and operator of The Super Chevy Show, seeks to protect its rights to the naturally corresponding trademarks "SUPER CHEVY SHOW" and "SuperChevyShow.com" (the "Super Chevy Show Marks"). It also seeks to recoup the thousands of dollars paid in fraudulently procured licensing fees to TEN,[1] a marketing agency that provided print media for the Super Chevy Show. Defendants' motion to dismiss should be denied because SCSW sufficiently pleads claims for declaratory judgment, tortious interference with contract and business relations and fraudulent inducement.

**The Super Chevy Show**

The Super Chevy Show is a series of racing events held throughout the United States. It was operated by Auto Star Productions, Inc. ("Auto Star"), and its sole shareholder, Roger Gustin, since approximately 1993, and is sponsored by members of the auto racing industry, including General Motors/Chevrolet (the "Chevy Sponsors").

In or around October 2009, SCSW purchased the Super Chevy Show from Auto Star. The sale was memorialized in a purchase agreement (the "Purchase Agreement"), and included

---

[1] As admitted in TEN's complaint, TEN is the successor in interest to Source Interlink. For the Court's convenience, we refer to Source Interlink as TEN.

"the name 'SUPER CHEVY SHOW' or any variant thereof and all associated goodwill." *See* Compl.[2] at ¶ 8, Ex. A, p. 2.

Following the purchase, TEN falsely advised SCSW that because it owned the magazine, SUPER CHEVY, TEN owned the trademark "SUPER CHEVY" (the "Contested Mark") and that SCSW must pay licensing fees to TEN to operate the Super Chevy Show. *Id.* at ¶ 9. Through TEN's blatant misrepresentation, SCSW was defrauded into signing a licensing agreement (the "Licensing Agreement").

In the Licensing Agreement, TEN re-affirmed its false claim to the Contested Mark, and defined the term "Licensed Property" as the Contested Mark. *See* Compl., Ex. B, p. 1. Paragraph 2(a) granted SCSW a "limited, exclusive, fee-bearing, revocable, and right and license to use" the Contested Mark. *Id.* Paragraph 11(a) stated that TEN "owns all right, title and interest, including all Intellectual Property Rights, in and to" the Contested Mark. *Id.* at p. 10.

Additionally, pursuant to the Licensing Agreement, SCSW agreed to pay TEN a minimum fee for each racing event and to maintain a website for the Super Chevy Show. *Id.* at Ex. B.

**The Super Chevy Show Marks**

Thereafter, SCSW operated the Super Chevy Show and paid TEN for use of the Contested Mark. *See* Compl. ¶ 10. In February 2012, SCSW registered the Super Chevy Show Marks to protect its asset against potential infringers. *Id.* TEN never objected to SCSW's filing or notified SCSW of an alleged competing claim to the Super Chevy Show Marks.

In late 2013, SCSW learned that TEN had financial difficulties and was unable to perform under the terms of the Licensing Agreement. *See* Compl. ¶ 11. For example, TEN failed

---

[2] All references to "Compl." shall refer to the SCSW, LLC Original Petition filed March 27, 2015 (D.I. 1, Ex. 1).

to provide sufficient media coverage for one of the Super Chevy Show events in May 2014. *Id.* at ¶ 12. SCSW began negotiating with third party entities such as Discovery Channel ("Discovery"), Velocity Network ("Velocity") and Masters Entertainment Group, Inc. ("Masters Entertainment," collectively the "Third Party Advertisers"), for additional media coverage. SCSW also procured a television contract with Masters Entertainment (the "SCSW Television Contract"). *Id.* at ¶ 21.

On October 2, 2014, SCSW terminated its relationship with TEN. *Id.* at ¶ 13. In response, TEN claimed that the Licensing Agreement barred SCSW from using the Super Chevy Show Marks even though SCSW previously registered the trademarks. TEN also began threatening members of SCSW and the Third Party Advertisers with legal action should they continue to work with SCSW and use the Contested Mark or the Super Chevy Show Marks. *See* Compl. ¶ 15. As a result of this intentional and willful misconduct by TEN, the Third Party Advertisers modified their contracts, including the SCSW Television Contract, and suspended work with SCSW. *Id.* at ¶ 16. In addition, TEN threatened legal action against the Chevy Sponsors, which led to Chevrolet prohibiting SCSW from using certain Chevrolet branding, including Chevrolet's "Chevy Performance" marks. *Id.* at ¶¶ 15-16. Being unable to use Chevrolet's marks is causing irreparable damage to the Super Chevy Show's image and reputation. *Id.* at ¶ 21.

On March 27, 2015, TEN filed a preemptive suit in the United States District Court, Central District of California for alleged trademark infringement (the "TEN Action"). Later that same day, SCSW filed its action in the District Court for the 170th District in McClennan County, Texas (the "SCSW Action"). Both actions have been transferred to this Court.

Defendants now seek dismissal of the SCSW Action, arguing that a ruling in the TEN Action that TEN owns the Contested Mark will render the SCSW Action moot. This argument fails because it ignores the controlling legal standard on a motion to dismiss - whether the complaint states a claim – not whether a related, pending action may resolve similar issues.

Notwithstanding, the legal and factual issues that must be adjudicated in the two actions are distinct, and thus the SCSW Action is not redundant. In this action, SCSW seeks a declaratory judgment that it "is the owner and registered holder" of the Super Chevy Show Marks and that defendants have not registered the Contested Mark. *See* Compl. ¶¶ 18-19. SCSW also seeks damages for defendants' tortious conduct in contacting the Third Party Advertisers and the Chevy Sponsors, and for fraudulently inducing SCSW into signing the Licensing Agreement. This action requires a jury to determine whether TEN interfered with SCSW's relationship with the Third Party Advertisers and the Chevy Sponsors. A jury must also determine whether TEN misrepresented that it owned the Contested Mark, whether this misrepresentation was material in causing SCSW to enter into the Licensing Agreement and whether SCSW was damaged because of this misrepresentation.

In the TEN Action, TEN seeks damages for trademark infringement, unfair competition, false advertising and breach of contract. TEN asks the Court to rule on whether it owns the Contested Mark and whether SCSW infringed its trademark. In contrast, SCSW seeks recovery of hundreds of thousands of dollars in licensing fees paid to TEN for use of the Contested Mark based on TEN's fraud and tortious interference. These are distinct causes of action, and both should be permitted to proceed on a consolidated basis.

Defendants also argue that the SCSW Action should be dismissed because SCSW's claims are barred by the Licensing Agreement. They rely on numerous provisions in the

Licensing Agreement to argue that all of SCSW's claims are barred. However, defendants are improperly attempting to use the fruit of their fraud to bar SCSW's claims. Because TEN fraudulently induced SCSW to sign the Licensing Agreement by misrepresenting that it owned the Contested Mark, it may not use the Licensing Agreement as a shield against those claims.

Additionally, defendants argue that this action should be dismissed under the first-filed rule. However, because this action and the TEN Action are both before this Court and because there is an alternative possibility of consolidating the actions, this action should not be dismissed.

Finally, defendants argue that SCSW failed to properly plead fraud with particularity. SCSW's allegations of fraud, however, stem directly from the misrepresentations in the Licensing Agreement. Pointing to the specific language of the Licensing Agreement is sufficient to place defendants on notice of the circumstances of their fraud, which is all that is required under the Federal Rules of Civil Procedure.

For these reasons, defendants' motion to dismiss should be denied.

## ARGUMENT

I. **SCSW PLEADS CLAIMS FOR DECLARATORY RELIEF, TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS AND FRAUDULENT INDUCEMENT**

On a motion to dismiss, a court must "accept as true all of the allegations contained in the complaint and draw reasonable inferences in favor of the plaintiffs." *Schock v. Baker*, 2010 U.S. Dist. LEXIS 94465, at *5 (D. Del. Sept. 10, 2010). To survive a motion to dismiss, the complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A court may only dismiss a complaint "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."

*Carefirst of MD, Inc. v. Care First Transp., Inc.*, 2002 U.S. Dist. LEXIS 22830, at *7 (D. Del. Nov. 1, 2002).

As set forth below, the complaint states a claim for declaratory relief, tortious interference with contract and business relations, and fraud/fraudulent inducement.

A.      **SCSW States a Claim for Declaratory Relief**

In its first claim, SCSW seeks a declaration that it is the "owner and registered holder of legal rights" to the Super Chevy Show Marks. *See* Compl. ¶ 18. As stated in the complaint, SCSW duly registered the Super Chevy Show Marks with the Texas Secretary of State in February 2012. *See* Compl. ¶ 10, Exs. C, C-1.

A complaint seeking declaratory relief states a claim if the Court has subject matter jurisdiction and an actual controversy exists. *See* 28 U.S.C. § 2201(a) (2014) ("In cases of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *W.L. Gore & Assocs. v. AGA Med. Corp.*, 2012 U.S. Dist. LEXIS 36640 (D. Del. Mar. 19, 2012).

The Court must look at "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *TSMC Tech., Inc. v. Zond, LLC*, 2015 U.S. Dist. LEXIS 1834, at *7 (D. Del. Jan. 8, 2015); *see W.L. Gore*, 2012 U.S. Dist. LEXIS 36640, at *12.

Here, there is an actual controversy relating to the ownership of the Super Chevy Show Marks and the Contested Mark. As alleged in the complaint, TEN challenged SCSW's ownership in the Super Chevy Show Marks by alerting the Third Party Advertisers and Chevy

Sponsors of alleged trademark infringement. *See* Compl. ¶¶ 15-16, 21-23. Moreover, defendants filed the TEN Action seeking damages against SCSW for use of the Contested Mark and Super Chevy Show Marks. SCSW needs this Court to issue a declaratory judgment that it is the owner of the Super Chevy Show Marks and that defendants do not own a federally registered trademark for the Contested Mark to resolve this dispute.

Accordingly, the complaint states a claim for declaratory relief and defendants' motion to dismiss should be denied.

**B.    SCSW States a Claim for Tortious Interference with Contract and Business Relations**

SCSW's second claim seeks damages for defendants' intentional misconduct in causing the Third Party Advertisers and Chevy Sponsors to modify and/or cancel their business relationship with SCSW, including the SCSW Television Contract. *See* Compl. ¶¶ 21-23. The allegations in the complaint sufficiently support claims for tortious interference with contract and tortious interference with business relations.

To plead tortious interference with contract, a plaintiff must allege: (i) a valid contract; (ii) about which the defendant knew; (iii) an intentional act that is a significant factor in the breach of the contract; (iv) done without justification; (v) that causes injury to the plaintiff. *See Travel Syndication Tech., LLC v. Fuzebox, LLC*, 2012 U.S. Dist. LEXIS 73117 (D. Del. May 25, 2012). The "focus of a claim for tortious interference with contractual relations is upon the defendant's wrongful inducement of a contract termination." *Id.*

Here, SCSW alleges that it was a party to the SCSW Television Contract. *See* Compl. ¶ 21. SCSW also alleges that TEN knew about the SCSW Television Contract, TEN notified Masters Entertainment that SCSW was infringing its trademark, the SCSW Television Contract

was modified and breached as a result of TEN's intentional, willful and unjustified misconduct and SCSW was damaged as a result. *See* Compl. ¶ 15-16, 21-23.

To plead a claim for tortious interference with business relations, a plaintiff must allege: (i) the reasonable probability of a business opportunity; (ii) the intentional interference by defendant with that opportunity; (iii) proximate cause; and (iv) damages. *Id.*

SCSW alleges that it maintained a business relationship with the Chevy Sponsors and that TEN's intentional and willful misconduct caused the Chevy Sponsors to prohibit SCSW's use of the GM's "Chevy Performance" for the 2015 Super Chevy Show events, thus causing significant damage to SCSW. *See id.* at ¶ 22.

Defendants argue that SCSW's tortious interference claim should be dismissed because it is barred by the Licensing Agreement. *See* Def. Mem. pp. 12-13. Specifically, defendants argue that because SCSW acknowledged that TEN owned the Contested Mark, agreed not to contest TEN's rights or register any associated marks and agreed that TEN had the right to protect its rights, it cannot seek damages for tortious interference. *Id.*

The proponent of a motion to dismiss, however, cannot rely on a void or voidable contract to seek dismissal of an action. *See Berger v. Zeghibe*, 465 Fed. Appx. 174, 184 (3d Cir. 2012) (because the contractual relationship is collateral to the tortious conduct and would not exist but for the fraud, the claims were not barred under the terms of that same contract). Indeed, because the validity of the Licensing Agreement is at the center of this controversy, and was procured by fraud, all arguments based on it must fail at the motion to dismiss stage. *Id.*

Defendants next claim that they acted in good faith when they sent cease and desist letters threatening legal action against those entities doing business with SCSW because they were simply protecting their rights. *See* Def. Mem. pp. 12-13. However, the standard on a

motion to dismiss is not whether defendants can assert a viable defense, but rather whether the complaint states a claim. As stated in the complaint, defendants intentionally threatened the Third Party Advertisers, members of SCSW and the Chevy Sponsors with legal action if they did not cease doing business with SCSW. As shown in the cases cited by defendants, whether defendants' actions were willful enough to rise to the level needed to prove tortious interference is, at the very least, a question that needs to be decided by a fact-finder. *See Wavedivision Hldings, LLC v. Highland Cap. Mgmt L.P.*, 2011 Del. Super. LEXIS 479 (Del. Sup. Ct. Oct. 31, 2011) (weighing facts to determine whether interference was justified); *NACCO Indus., Inc. v. HB-PS Hlding Co., Inc.*, 997 A.2d 1, 33 (Del. Ch. 2009) (denying motion to dismiss where allegations were sufficiently pled to state claim for tortious interference); *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983 (Del. Ch. 1987) (denying summary judgment motion where facts existed as to whether alleged tortfeasor acted with justification).

Because SCSW's allegations sufficiently support claims for tortious interference with contract and tortious interference with business relations, defendants' motion to dismiss should be denied.

C. **SCSW Sufficiently Pleads Fraudulent Inducement**

SCSW's third claim alleges fraud and fraudulent inducement. *See* Compl. ¶¶ 25-28. To plead fraud in the inducement, a plaintiff must allege: (i) a misrepresentation of a material fact; (ii) intent to deceive or a state of mind so reckless regarding consequences as to be the equivalent of intent; (iii) justifiable reliance on the misrepresentation; and (iv) injury to the deceived party resulting from the reliance. *See Tani v. FPL/Next Era Energy*, 2013 U.S. Dist. LEXIS 105600, at *26 (D. Del. July 29, 2013); *RCA Corp. v. Data Gen. Corp.*, 1986 U.S. Dist. LEXIS 18486, at *7 (D. Del. Oct. 27, 1986).

Although Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead these elements with particularity, the Third Circuit held that plaintiffs need only put defendants on notice of the precise circumstances of the fraud. The Third Circuit held:

> Rule 9(b) requires plaintiff to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place and time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Sevelle Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "The requirement of particularity does not require an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred. *Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 17 (D. Del. 2010). "Even absent allegations with respect to the exact factual context or words, a description of the nature and subject matter of the representation" is sufficient. *Buckley v. O'Hanlon*, 2007 U.S. Dist. LEXIS 22211, at *27 (D. Del. Mar. 28, 2007).

SCSW's allegations satisfy the Third Circuit's standard. SCSW alleges that TEN "knowingly and intentionally made false representations to [SCSW] as to material facts contained [in the Licensing Agreement]." Compl. ¶ 25. SCSW specifically states that the fraudulent misrepresentation "included that [TEN] owned a federally registered trademark in the [Contested Mark]." *Id.* Moreover, SCSW alleges that the material misrepresentation was "made with the intent to induce [SCSW] to enter into the Licensing Agreement," SCSW "relied on [TEN's] false representations, to its detriment" and that SCSW incurred thousands of dollars in damages. *See* Compl. ¶¶ 25-28.

Defendants argue that the allegations are insufficient because SCSW does not include the name of the speaker, the place at which the statements were made or the date on which the statements were made. Def. Mem. p. 14. However, the allegations are clear that the fraudulent statements were knowingly and intentionally made by TEN to SCSW and were incorporated into the Licensing Agreement. *See* Compl. ¶¶ 25-26, Ex. B. SCSW reasonably relied on the fraudulent statements and entered into the Licensing Agreement to its detriment. *Id.* Because the entirety of the fraud is alleged in the Complaint and places defendants on notice of the claims, defendants' motion to dismiss should be denied. *Id.*

Defendants also argue that the fraudulent inducement claim is barred by the Licensing Agreement. *See* Def. Mem. pp. 13-14. First, defendants contend that the Licensing Agreement contains an integration clause that prohibits SCSW from relying on any representations made prior to the Licensing Agreement. But the law is clear that defendants cannot hide behind an integration clause in an agreement they procured by fraud. *See Berger*, 465 Fed. Appx. At 184. Moreover, even if the Licensing Agreement was valid, and the integration clause enforceable, defendants could not rely on that clause because the very fraudulent statements relied upon by SCSW are in the Licensing Agreement. *See* Compl., Ex. B., pp. 1, 10; *Bayer Corp. v. Chiron Corp.*, 2002 U.S. Dist. LEXIS 22938 (D. Del. Nov. 8, 2002) (plaintiff sufficiently stated a claim for fraud by alleging that the misrepresentations "are contained in the agreement itself.").

Defendants' cases are inapposite. In *H-M Wexford LLC v. Encorp., Inc.*, 832 A.2d 129, 142 (Del. Ch. 2003), the plaintiff sued a company that allegedly induced it to purchase shares of stock based on financial statements found in a confidential memorandum provided to plaintiff. Although this memorandum contained false information related to defendant's financial condition, it was not part of the purchase agreement. The court found that because the false

financial information was not in the agreement, plaintiff could not rely on that information to sue for fraud. Here, the false statements are in the Licensing Agreement.

Likewise, in *Progressive Int'l Corp. v. E.I. Du Pont De Nemours & Co.*, 2002 Del. Ch. LEXIS 91 (July 9, 2002), plaintiff sued to rescind a licensing agreement based on statements that were not in the agreement. The court dismissed the claim because "the existence of an integration clause between sophisticated parties is conclusive evidence that the parties intended the written contract to be their complete agreement." *Id.* at *25.

Here, there is no doubt that the fraudulent information is in the document SCSW seeks to void. Unlike in *H-M Wexford* or *Progressive*, SCSW is not relying on information extraneous to the Licensing Agreement. The same fraudulent statements made by TEN prior to the execution of the Licensing Agreement are in the Licensing Agreement. Defendants cannot disclaim the fraudulent statements by pointing to the integration clause because those same fraudulent statements are within the four corners of the Licensing Agreement.

Additionally, defendants claim that SCSW could not have been fraudulently induced into signing the Licensing Agreement because TEN reserved the right to register the Contested Mark. In other words, defendants claim that since TEN reserved the right to register the Contested Mark, it could not already have owned a federally registered trademark. Defendants also argue that SCSW could not have reasonably relied on any statements of ownership by TEN because "such information is publicly available, on the USPTO website." Def. Mem. p. 14.

Both of these arguments are premature because on a motion to dismiss, the Court must accept as true all allegations contained in the complaint. *See Schock*, 2010 U.S. Dist. LEXIS 94465, at *5. As shown above, SCSW alleges each element of a claim for fraudulent inducement. *See supra* pp. 9-11. Whether SCSW's reliance on the fraudulent statements made

by TEN and in the Licensing Agreement was reasonable is at the very least a question of fact. *See VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 333 (D. Del. 2013). Accordingly, defendants' motion to dismiss should be denied.

## II. SCSW'S CLAIMS ARE NOT MOOT

Defendants argue that this action is moot because it seeks adjudication of the same issues as those asserted in the TEN Action. Def. Mem. pp. 10-11. However, as shown on pages 4-5, *supra*, this is not true. The SCSW Action presents numerous additional factual and legal issues that must be adjudicated in addition to those presented in the TEN Action. *See supra* pp. 4-5. For example, in this action, SCSW seeks to affirm its ownership in the Super Chevy Show Marks and seeks damages for tortious interference and fraud. The Court and a jury must look at TEN's actions and material misrepresentations and determine whether they rise to a level of misconduct sufficient to award damages to SCSW. In the TEN Action, the sole issue asserted is whether SCSW owns the Contested Mark. There will be no examination of TEN's actions following the termination of the Licensing Agreement and no award of affirmative relief to SCSW.

Because dismissal of an independent action is a severe punishment, courts are hesitant to dismiss actions as moot, especially those seeking declaratory judgments. In fact, in *Penn Mutual Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, the only case defendants cite in support of this argument, the court declined to dismiss a declaratory judgment. It held:

> [C]onsidering the difficulty in determining whether a declaratory judgment counterclaim is in fact redundant prior to trial . . . authorities suggest that a court should dismiss such counterclaims *only when there is no doubt that they will be rendered moot by adjudication of the main action*.

2010 U.S. Dist. LEXIS 77334, at *17-18 (D. Del. July 30, 2010) (*citing Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 566 (D. Del. 2009)) (emphasis added).

Defendants have not come close to meeting the "no doubt" standard set forth in *Penn Mutual*. Regardless of whether TEN prevails in its claim for trademark infringement of the Contested Mark, SCSW is entitled to protect its intellectual property rights in the Super Chevy Show Marks. Although similar, the Contested Mark and the Super Chevy Show Marks are not the same. Moreover, SCSW is entitled to prove that defendants tortiously interfered with its relationship with the Third Party Advertisers and the Chevy Sponsors. Thus, SCSW respectfully requests that this Court deny defendants' motion to dismiss.

III. **THE FIRST FILED RULE SHOULD NOT APPLY TO THE SCSW ACTION**

Defendants also ask the Court to dismiss the SCSW Action under the "first filed rule" because it was filed a few hours after the TEN Action. Def. Mem. p. 3. However, defendants misconstrue the first filed rule and fail to support their argument with any relevant caselaw. First, the first filed rule is generally applied when two cases involving the same controversy are filed in different courts. *See TSMC Tech., Inc. v. Zond, LLC*, 2014 U.S. Dist. LEXIS 175201 (D. Del. Dec. 19, 2014). Here, both actions are pending in this Court.

The sole case cited in support of defendants' argument, *Woodbolt Distrib., LLC v. Natural Alt. Int'l*, 2013 U.S. Dist. LEXIS 8751 (D. Del. Jan. 23, 2013), is easily distinguishable. In this action, the plaintiff filed a declaratory judgment action in Delaware related to a patent. Later that same day, defendant filed a patent infringement action in the Southern District of Texas and moved to dismiss or transfer the plaintiff's action. Plaintiff argued that because it filed its action first, the court should dismiss defendant's subsequently filed action. In rejecting plaintiff's argument, the court held that just because a plaintiff files an action first, does not automatically ensure that a subsequently filed action will be dismissed. Indeed, the court actually dismissed the plaintiff's first filed action, noting that exceptions to the first filed rule

"are not rare, and are made when justice or expediency requires." *Woodbolt*, 2013 U.S. Dist. LEXIS 8751, at * 6.

Because both the SCSW Action and the TEN Action are pending in this Court, the first filed rule is inapplicable and the Court should deny defendants' motion to dismiss in its entirety.[3]

## CONCLUSION

For the foregoing reasons, SCSW respectfully requests that the Court deny defendants' motion to dismiss.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  |  |
|  | */s/ Tiffany Geyer Lydon* |
|  | _____ |
|  | John G. Day (#2403) |
| *Of Counsel:* | Tiffany Geyer Lydon (#3950) |
|  | Andrew C. Mayo (#5207) |
| Andrew Kazin | 500 Delaware Ave., 8th Floor |
| Brian A. Lacoff | P.O. Box 1150 |
| STAGG TERENZI CONFUSIONE & WABNIK | Wilmington, DE  19899 |
| 401 Franklin Avenue, Suite 300 | (302) 654-1888 |
| Garden City, NY  11530 | jday@ashby-geddes.com |
| (516) 812-4500 | tlydon@ashby-geddes.com |
|  | amayo@ashby-geddes.com |
|  |  |
| Dated:  August 21, 2015 | *Attorneys for SCSW, LLC* |

---

[3] It should be noted that courts will not dismiss a subsequently filed action where, as here, there is a possibility to consolidate. *See TSMC*, 2014 U.S. Dist. LEXIS 175201, at *12. Federal Rule of Civil Procedure 42(a) permits a court to consolidate actions involving common questions of fact or law.  Courts will examine whether there are overlapping parties, witnesses and documents between the actions. *See Eastman Chem. Co. v. AlphaPet Inc.*, 2011 U.S. Dist. LEXIS 152907, at *12-13 (D. Del. Dec. 29, 2011) (permitting consolidation of patent cases involving same technology and parties).  Here, since the parties are identical and the claims arise out of issues involving the Super Chevy Show, it may be appropriate to consolidate the actions to avoid any conflicting findings of fact.  Counsel for SCSW reached out to defendants' attorneys to suggest this course of action, but were advised that no such agreement would be reached until after this motion is ruled upon.