# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCSW, LLC, | : |
| Plaintiff, | : |
| v. | : Civ. No. 15-504-LPS |
| TEN: THE ENTHUSIAST NETWORK MAGAZINES, LCC and SOURCE INTERLINK MAGAZINES, LLC, | : |
| Defendants. | : |

John G. Day, Tiffany Geyer Lydon, Andrew C. Mayo, Ashby & Geddes, Wilmington, Delaware.

Andrew Kazin, Brian A. Lacoff, Stagg Terenzi Confusione & Wabnik, Garden City, New York.

    Attorneys for Plaintiff

David E. Ross, Benjamin J. Schladweiler, Ross Aronstam & Moritz LLP, Wilmington Delaware.

John K. Crossman, Frank C. Welzer, Zukerman Gore Brandeis & Crossman, LLP, New York, New York.

    Attorneys for Defendants

## **MEMORANDUM OPINION**

August 22, 2016
Wilmington, Delaware.



**STARK, U.S. District Judge:**

## I. INTRODUCTION

Presently before the Court is Defendant TEN: The Enthusiast Network Magazines, LLC's ("Defendant" or "TEN") Motion to Dismiss for Failure to State a Claim. (D.I. 14) For the reasons set forth below, the motion will be granted in part and denied in part.

## II. BACKGROUND[1]

Plaintiff SCSW, LLC ("Plaintiff" or "SCSW") is a Delaware limited liability company with a principal place of business in Waco, McLennan County, Texas. (D.I. 1-1 at ¶ 2) "Plaintiff was formed for the purpose of purchasing a racing event known as 'Super Chevy Show'" from an entity known as Auto Star Production, Inc. (D.I. 1-1 at ¶ 7) Plaintiff's business includes operating a series of auto racing events in the United States known as the "Super Chevy Show." (*Id.* at 11; *see also* D.I. 15 at 3-4; D.I. 18 at 1)

Defendant is a Delaware limited liability company with a principal place of business in El Segundo, California. (D.I. 1-1 at 1)[2] Defendant has provided marketing services for Plaintiff. (D.I. 18 at 1)

In November 2009, SCSW and TEN entered into a licensing agreement (the "Licensing Agreement") relating to the trademark "SUPER CHEVY" (the "SUPER CHEVY Mark"). (*See* D.I. 1-1 at ¶ 9; D.I. 15 at 4; D.I. 16 at 5-6; D.I. 18 at 2) In addition to using the SUPER CHEVY

---

[1]This Background is based, as it must be at this stage, on taking as true all well-pleaded factual allegations in the Complaint. *See, e.g., Erickson v. Pardus*, 551 U.S. 89 (2007).

[2]The Complaint names a second defendant, Source Interlink Magazines, LLC ("Source"). (D.I. 1-1 at ¶ 4) In the briefing, TEN explains that Source "is the same legal entity as TEN. Source changed its name to TEN in 2014." (D.I. 15 at 1 n.1) SCSW does not dispute these representations. (*See* D.I. 18 at 1 n.1) The Court will dismiss Source from this case.

Mark, Plaintiff eventually "filed an application with the Texas Secretary of State, seeking to secure a trademark for 'Super Chevy Show' and 'SuperChevyShow.com' [together the "SHOW Marks"]." (D.I. 1-1 at ¶ 10) SCSW alleges that it entered into the Licensing Agreement "based in large part on representations to Plaintiff that [Defendant] owned a federally registered trademark in the phrase 'SUPER CHEVY.'" (*Id.* at ¶ 9) After entering into the Licensing Agreement, SCSW discovered that TEN did not own or protect the mark. (*Id.*) Eventually, on or about October 2, 2014, SCSW terminated the License Agreement. (*Id.* at ¶ 13)

Thereafter, on March 27, 2015, TEN filed suit against SCSW in the United States District Court for the Central District of California (the "TEN Action"). (D.I. 15 at 7) "TEN's Complaint alleges causes of action against SCSW for: (1) trademark infringement, (2) breach of contract, (3) unfair competition/false designation of origin under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* as amended (the 'Lanham Act'), and (4) false advertising." (*Id.*) Generally, TEN alleges that SCSW continued to use the Mark, without authorization, after the termination of the License Agreement. (*See id.* at 1)

Also on March 27, 2015, several hours after Defendant filed the TEN Action, SCSW filed suit against TEN in the District Court of McLellan County, Texas (the "SCSW Action"). (D.I. 1) SCSW pleads three causes of action in its Complaint. Count I asks the Court to declare Plaintiff as the owner and registered holder of legal rights to the SHOW Marks under the Texas Trademark Act and declare that Defendant has not registered any trademark for the SUPER CHEVY Mark. Count II alleges Defendant tortiously interfered with Plaintiff's contracts and/or prospective business relations with third parties who could assist Plaintiff with alternative marketing strategies. Defendant allegedly interfered by "communicat[ing] threats of legal action

2

toward" these third parties. (D.I. 1-1 at ¶ 21) Finally, in Count III, Plaintiff alleges that Defendant committed fraud and fraudulent inducement by making "false representations includ[ing] that [Defendant] owned a federally registered trademark in the phrase 'SUPER CHEVY' . . . [when] [i]n fact, [Defendant] did not then, nor does it today, hold any statutory or registered trademark, whether state or federal, in 'SUPER CHEVY' or any other alleged variation." (*Id.* at ¶ 25) Plaintiff further alleges that it relied on these false representations, to its detriment, in agreeing to enter into the License Agreement. (*Id.*)[3]

TEN removed the SCSW Action to the United States District Court for the Western District of Texas and, on May 1, 2015, the SCSW Action was transferred to this Court. (*See id.*) The SCSW Action, which has been assigned C.A. No. 15-504-LPS, is the instant action in which the Court is now considering TEN's motion to dismiss.

Meanwhile, on May 28, 2015, the TEN Action was also transferred to this Court. The TEN Action has been assigned C.A. No. 15-437-LPS and remains pending.

TEN filed its motion to dismiss the SCSW Action on July 24, 2015. (D.I. 14) It was fully briefed as of September 10, 2015. (D.I. 15, 18, 19) Trial is scheduled to begin on July 31, 2017. (*See* D.I. 23)

---

[3]SCSW's Complaint also includes Counts IV, V, VI, and VII, seeking, respectively, "Damages," confirmation that "All conditions precedent to Plaintiff's initiation of this suit have occurred and/or been performed," "Attorneys' Fees," and a "Prayer" for relief. (D.I. 1-1 at 11-12) SCSW does not dispute TEN's contention that these "Counts" are "remnants" of Texas state court practice and should be dismissed. (D.I. 15 at 8) The Court will dismiss them, an action which is merely ministerial and does not affect SCSW's rights.

3

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

The Court may also consider exhibits attached to the complaint. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 19993). Here, neither party appears to dispute that the Court may consider the terms of the License Agreement, which is attached to the Complaint (*see* D.I. 1-1 at 15-23), as part of its evaluation of the motion to dismiss. The Court will do so.

### B.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Although allegations of date, place, and time may fulfill the requirement of pleading with particularity, these types of allegations are not required in order to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

## III. DISCUSSION

### A. Redundancy

TEN first contends that all three of SCSW's counts should be dismissed because they are redundant. That is, TEN contends that resolution of the claims presented in TEN's own TEN Action, which is the first-filed action between the parties, will necessarily resolve all of the disputes SCSW presents in its own Complaint. The Court disagrees.

In Count I, Plaintiff seeks a declaratory judgment that it is "the owner and registered holder of legal rights under the Texas Trademark Act," that SCSW "is the sole owner of the following duly registered Texas Trademarks: (1) Super Chevy Show; and (2) Superchevyshow.com," and that "neither Defendant in this case has registered, either at the State or Federal level, any trademark for SUPER CHEVY." (D.I. 1-1 ¶¶ 18-19)[4] TEN argues that this "claim is redundant, however, because a finding in the [TEN Action] that SCSW is unlawfully using the [SUPER CHEVY] Mark would necessarily moot the declaration sought by SCSW." (D.I. 15 at 10-11) (internal citations omitted) In response, Plaintiff argues that this action "presents numerous additional factual and legal issues that must be adjudicated in addition to those presented" in the TEN Action. (D.I. 18 at 13)

TEN is correct that it would be appropriate to dismiss SCSW's declaratory judgment claim if it were "clear that there is a complete identity of factual and legal issues between"

---

[4]The Declaratory Judgment Act allows a federal court to resolve a dispute between two adverse parties having an "actual controversy." *See* 28 U.S.C. § 2201 (2006); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) ("The Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party, not that it must do so.") (internal emphasis, quotation marks, and citations omitted). There is clearly an actual controversy between SCSW and TEN.

6

SCSW's claim and the claims TEN asserts in the TEN Action. *Penn Mut. Life. Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, 2010 WL 3023402, at *6 (D. Del. 2010) (cited at D.I. 15 at 10). However, such "complete identity" is not "clear" here. Instead, it appears that "complete identity" would be possible only if the Court assumes that TEN will prevail on all claims in the TEN Action. If TEN does not prevail, then issues surrounding the proper relief to which SCSW would be entitled will arise in the SCSW Action, but would not arise in the TEN Action.

As SCSW explains, in the SCSW Action it "seeks to recoup the thousands of dollars paid in fraudulently procured licensing fees to TEN, a marketing agency that provided print media for the Super Chevy Show." (D.I. 18 at 1) (internal footnote omitted) "SCSW also seeks damages for defendants' tortious conduct in contacting the Third Party Advertisers and the Chevy Sponsors, and for fraudulently inducing SCSW into signing the Licensing Agreement." (*Id.* at 4) These things will not necessarily occur as part of the TEN Action, but will necessarily be part of the SCSW Action.

Furthermore, the SCSW Action involves not just the SUPER CHEVY Mark, as the Ten Action does, but also the SHOW Marks. Also, the TEN Action appears to implicate only events leading up to SCSW's termination of the License Agreement, whereas the SCSW Action will require examination of events that occurred following that termination.

The case on which Defendant relies for dismissal, *Penn Mutual,* observes that "a court should dismiss . . . counterclaims only when there is no doubt that they will be rendered moot by adjudication of the main action." 2010 WL 3023402, at *5. Here, for the reasons stated above, the Court is unable to conclude there is "no doubt" that adjudication of Plaintiff's declaratory judgment claim will be rendered moot by adjudication of the TEN Action.

The same reasoning is applicable to Defendant's effort to dismiss Counts II and III for being redundant. In TEN's view, SCSW's tortious interference claim is based on "TEN's alleged wrongful conduct in 'communicat[ing] threats of legal action toward Discovery and/or Velocity and/or Masters,' GM and Chevrolet" and a finding in the TEN Action that TEN owns the SUPER CHEVY Mark and that SCSW engaged in unauthorized use of these marks "would necessarily moot this cause of action." (D.I. 15 at 10-11) But TEN might not prevail in the TEN Action – and if it does not, SCSW should have an opportunity to prove tortious interference and seek affirmative relief, two things that would not necessarily occur in the TEN Action even if SCSW prevails in that action.

For similar reasons, SCSW's Count III, for fraud and fraudulent inducement, will not be dismissed as redundant. Plaintiff alleges that Defendant misrepresented its ownership in the SUPER CHEVY Mark. Defendant contends that this claim is redundant, "as a finding in the [TEN Action] that TEN owns the [SUPER CHEVY] Mark and that SCSW has unlawfully used the [SUPER CHEVY] Mark would necessarily moot this cause of action." (*Id.*) Again, however, the TEN Action may not result in a finding that TEN owns the SUPER CHEVY Mark and that SCSW has unlawfully used it; in that event, Plaintiff should have an opportunity to prove that it only entered into the License Agreement due to fraud and should be able to recover for that harm, none of which would necessarily occur in the context of the TEN Action.

Accordingly, the Court will not dismiss SCSW's Complaint due to redundancy.

### B. Failure to State a Claim

Defendant next seeks to dismiss Plaintiff's tortious interference and fraud and fraudulent inducement claims for failure to state a claim. Specifically, TEN asserts that "SCSW's second

8

and third causes of action are precluded by the terms of the [L]icense Agreement attached to SCSW's Complaint." (*Id.* at 2) The Court does not agree with Defendant as to tortious interference but does agree with Defendant as to fraud and fraudulent inducement.

### 1. Tortious Interference

In Count II, Plaintiff alleges that "Defendants have communicated threats of legal action toward" third-party entities that Plaintiff had contracted with or was attempting to contract with and that this amounts to tortious interference with contract and with prospective business relations. (D.I. 1-1 at 15-17) Defendant moves to dismiss based on its contention that it is barred by the Licensing Agreement, in which, among other things, SCSW agreed that TEN owns the rights in the SUPER CHEVY Mark and further agreed that TEN had the right to protect its intellectual property rights. (D.I. 15 at 12-13) To TEN, then, SCSW has failed to plead the essential element of its claims that TEN's intentional acts were "without justification." (*Id.* at 12) The Court disagrees.

"In order to establish a claim for tortious interference with contractual relations, a plaintiff must show that there was: (1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987). The elements for stating a claim for tortious interference with prospective business relations are similar: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *DeBonaventura v.*

9

*Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981).

Taking Plaintiff's well-pleaded factual allegations as true, the Court concludes that Plaintiff has stated a claim for tortious interference on which relief may be granted. Defendant's contention that Plaintiff's claim is barred by the License Agreement – and particularly that all of Defendant's alleged wrongful acts were taken with justification – depends on accepting Defendant's interpretation of the License Agreement. But at this point in these proceedings the Court has not concluded that Defendant's is the only reasonable interpretation of that Agreement. Moreover, Plaintiff alleges that its execution of the License Agreement was procured by fraud. "[T]he validity of the Licensing Agreement is at the center of this controversy." (D.I. 18 at 8) (citing *Berger v. Zeghibe*, 465 Fed. Appx. 174, 184 (3d Cir. 2012) Thus, the Court is not persuaded at this time that the License Agreement bars all potential liability for tortious interference.

Accordingly, the Court will deny the motion to dismiss the tortious interference claim.

### 2. Fraud and Fraudulent Inducement

In Count III, Plaintiff alleges that Defendant committed fraud and fraudulent inducement by falsely misrepresenting that Defendant had federally registered the SUPER CHEVY Mark, a misrepresentation on which Plaintiff detrimentally relied in entering into the License Agreement. To state a claim for fraud under Delaware law, a plaintiff must allege:

> 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.

10

*Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000). Similarly, to state a claim for fraud in the inducement under Delaware law, a plaintiff must allege that: (1) defendant falsely represented a material fact or omitted facts that the defendant had a duty to disclose; (2) defendant knew that the representation was false or made with a reckless indifference to the truth; (3) defendant intended to induce plaintiff to act or refrain from action; (4) plaintiff acted in justifiable reliance on the representation; and (5) plaintiff was injured by its reliance on defendant's representation. *Dougherty v. Mieczkowski*, 661 F. Supp. 267, 274 (D. Del. 1987).

For several reasons, the Court will dismiss Plaintiff's fraud and fraudulent inducement claims.

First, Plaintiff fails to allege with sufficient specificity the purportedly fraudulent statement. The Complaint merely alleges that TEN "knowingly and intentionally" made a false representation that it "owned a federally registered trademark in the phrase 'SUPER CHEVY.'" (D.I. 1-1 at ¶ 25) However, as TEN points out, "neither the Complaint nor SCSW's [brief] cites to any specific statement in the License Agreement that says TEN 'owns a federally registered trademark.'" (D.I. 19 at 2) Plaintiff acknowledges that its claim of fraud is based solely on representations contained in the License Agreement. (*See* D.I. 18 at 5) But Plaintiff's claim fails because it does not identify anywhere in that Agreement that the purported misrepresentation is actually made.

Second, Section 11(a) of the License Agreement states: "Licensor [TEN] shall have the right, at its own expense and discretion, ***to seek protection for, register***, and perfect all Intellectual Property Rights arising out of or relating to the Licensed Property [i.e., the SUPER CHEVY Mark] or the Licensed Event." (D.I. 1-1 at p. 10) (emphasis added) The Court agrees

11

with TEN that "SCSW's acknowledgment that TEN had the *right* to register its Mark" is inconsistent with "SCSW's allegation that it relied upon an express representation that the Mark was *already* registered." (D.I. 15 at 13) Hence, Plaintiff's allegation of detrimental reliance on Defendant's alleged misrepresentation is not plausible and Count III fails to state a claim on which relief may be granted.

SCSW argues: "Because TEN fraudulently induced SCSW to sign the Licensing Agreement by misrepresenting that it owned the Contested Mark, it may not use the Licensing Agreement as a shield against those claims." (D.I. 18 at 5) (citing *Berger*, 465 Fed. Appx. at 184) Here, however, TEN is not relying on the License Agreement as a shield so much as it is pointing to a provision – TEN's right to register the SUPER CHEVY Mark *in the future* – as the basis for showing the implausibility of Plaintiff's allegations. Plaintiff's allegations that it believed that TEN already had a federal registration for the SUPER CHEVY Mark and that it detrimentally relied on this federal registration are rendered implausible in light of Plaintiff's agreement that TEN could *in the future* register this Mark. While SCSW's granting of this right to TEN might not be enforceable – if it were ultimately found to have been induced by fraud – the fact that the License Agreement expressly states that TEN might *in the future* register the Mark means it is implausible that SCSW detrimentally relied on a false belief that TEN had already federally registered the Mark. Plaintiff's assertion that it is "premature" to consider this argument is incorrect. (D.I. 18 at 12) To the contrary, the Court is obligated to dismiss an implausible claim for fraud.

Accordingly, the Court will dismiss Count III.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part.  An appropriate Order follows.