IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TEN: THE ENTHUSIAST NETWORK, MAGAZINES, LLC, Plaintiffs, : C.A. No.: 15-437-LPS

v.

SCSW, LLC, Defendant.

---

SCSW, LLC, Plaintiff, : C.A. No.: 15-504-LPS

v.

TEN: THE ENTHUSIAST NETWORK, MAGAZINES, LLC, Defendant.

Thursday, December 22, 2016
1:45 p.m.

Teleconference
Chambers of Chief Judge Leonard P. Stark

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE Chief Leonard P. Stark, United States District Court Judge

APPEARANCES:

ROSS, ARONSTOM & MORITZ LLP
BY: BENJAMIN SCHLADWEILER, ESQ.

-and-

ZUKERMAN GORE BRANDEIS & CROSSMAN LLP
BY: FRANK WELZER, ESQ.

On behalf of Plaintiff

ASHBY & GEDDES, P.A.
BY: TIFFANY LYDON, ESQ.

-and-

STAGG TERENZI CONFUSIONE & WABNIK
BY: ANDREW KAZIN, ESQ.
BY: THOMAS STAGG, ESQ.
BY: BRIAN LACOFF, ESQ.

On behalf of Defendant

THE COURT: Good afternoon, counsel. This is Judge Stark. Who's there, please?

MR. SCHLADWEILER: Good afternoon, Your Honor. This is Ben Schladweiler from Ross Aronstam & Moritz on behalf of Plaintiff Ten. I'm joined today by Frank Welzer from Zuckerman Gore.

THE COURT: Okay.

MR. WELZER: Good afternoon, Your Honor. This is Frank.

MS. LYDON: Good afternoon, Your Honor. On behalf of SCSW, Tiffany Lydon from Ashby & Geddes and with me are my co-counsel Tom Stagg, Andy Kazin and Brian Lacoff from Stagg Terenzi.

MR. KAZIN: Good afternoon, Your Honor.

THE COURT: Good afternoon to all of you, and I'm here with my court reporter. For the record, it is our case of Ten the Enthusiast Network, Magazines, LLC vs. SCSW LLC, Civil Action No. 15-437-LPS. This is the time we set to talk about certain discovery-related

disputes. I've reviewed the letters and I think it would be helpful to have a brief conversation.

Let me hear first from Ten, please.

MR. WELZER: Good afternoon, Your Honor. This is Frank Welzer again. Briefly by way of background, I know that Your Honor is familiar with the case from your decision back in the summer. But very briefly, I represent Ten the Enthusiast Network, Magazines and that's the Plaintiff in the case at the top of the caption and the Defendant in the consolidated case.

Back in November of 2009 Ten entered into an agreement with SCSW pursuant to which SCSW would pay Ten approximately $220,000 a year to use the mark Super Chevy. It's a very strong agreement from Ten's perspective and I won't discuss details unless you're interested. But the agreement terminated in November of 2014 and SCSW continues to use the mark.

SCSW had claimed that it was fraudulently led to enter into the agreement,

but Your Honor dismissed that claim back in August of 2016. The reason for this call is that after the Court dismissed the fraudulent inducement claim, the parties exchanged or completed document production and we were on the cusp of having depositions.

The problem is back in October, specifically on October 14th, SCSW brought the deposition process to a complete halt by refusing to participate. As you know from the end of our November letter to Your Honor, my client Ten is seeking two things. First of all, we're seeking an order setting SCSW's depositions for a date certain.

And given what's happened in the case so far, we want to make sure that the order regarding SCSW's depositions has some teeth in it and that will provide that SCSW will face sanctions pursuant to Federal Rule Civil Procedure 37(d) and Local Rule 1.3 by having SCSW's complaints in this action and its answer in Ten's action stricken and judgment entered against it if SCSW's witnesses don't show up for deposition. Now --

THE COURT: Let me interrupt you, Mr. Welzer. Let me ask you a few questions. First off, why would I need to decide today what the sanction should be if I order them to appear by a certain date and they don't? Can't that wait until we see if they, in fact, don't show up?

MR. WELZER: Well, the problem is what led us to be here, what led us to the point where we're at now, SCSW had been pushing for depositions. They said they would not mediate until we had depositions so we worked very hard to coordinate schedules and travel plans in order to get the depositions going starting on October 17th.

I flew to Los Angeles the Thursday afternoon before the Monday morning first deposition. And on Friday afternoon I received an email followed up with a call, this is all laid out in our letter, that SCSW was cancelling those depositions and they apologized for the last-minute notice. And frankly, SCSW's attorney was very, very gracious and apologetic.

During the conversation I told

them I was in Los Angeles. We worked very hard to schedule the depositions for October 17th, 18th and 20th and that we should proceed. And SCSW's attorney very graciously said he would work with his side to see if we could proceed with the depositions and then he called back and said they're not going to happen and I asked for an explanation and SCSW's attorney said he could not explain to me why the depositions would not go forward because doing so would be detrimental to his client.

After that fiasco, which caused me great personal anguish but I won't get into that, I came back to the East Coast and we had a conversation with Delaware counsel and my Long Island based adversary about the whole deposition situation. And as part of trying to work together to resolve this so that discovery could be completed before the November 18th discovery end date, I urged for them to give me dates for their witnesses' depositions and during that call --

THE COURT: Mr. Welzer, I'm going to have to stop you. I know we started late and

I've read the letters. Just try to answer my questions. They suggest that you were in LA on other business. You say in your letter one reason you wanted a call was to correct certain misstatements. Is that one of the misstatements in their letter?

MR. WELZER: Yes, Your Honor, there are really three reply points I would like to make. The first point is they say I was in California anyway for another case so they should not have to pay my costs. Well, I will say I would not have been in California but for these depositions. I attended a very short settlement conference in Orange County and I would not have attended that conference but for the fact that I was going to marry that attendance with these depositions. It was discussions of our local counsel in that case attending that without me, but I was able to --

THE COURT: All right. Thank you. That's Point 1. What is Point 2, please?

MR. WELZER: I'm not seeking any double costs from them. The travel costs were split. Point 2, in their letter they explained

for the first time or they tried to explain their cancellation of the depositions by saying that it might compromise a potential settlement as discussions were held between the parties' principals. Well, that's a very unartful sentence at best.

There were no discussions being held as of October 14th, which is the date that they cancelled the depositions. For starters, I was defending the CEO's deposition on that Monday and if there were any discussions, we would have known. But we believe that they're talking about a call that their principal made a week later on October 21st to our side just to touch base. Then there was a meeting on Halloween, October 31st. That was 17 days after they cancelled the depositions and there was no settlement proposal made until 25 days after they cancelled the depositions. That was November 8th, so that's Point 2. There were no settlement discussions going on.

Point 3 is they make no reference that they want to seek to get the Court to direct us to advise whether we will consent to

mediation. As they well know, we have our third call with the magistrate judge concerning scheduling mediation scheduled for January 9th. And the only reason that we haven't mediated is that they said they needed to complete depositions before they would mediate.

It's an extremely frustrating situation. I apologize if I might sound emotional, but it's an ever-shifting landscape. We just wanted to get depositions done by the November 18th discovery cut-off. They've played with our schedules, they've cost our clients an unfair cost and they refuse to appear for depositions before the discovery end date. We were promised dates by October 24th.

THE COURT: Mr. Welzer, well, we are now obviously is well past November 18th. If I'm going to order them to appear for depositions here in Delaware, by what date at this point do you want me to order them to do so?

MR. WELZER: January 23rd through 27th looks good or February 6th through 10th might work.

THE COURT: If I'm going to set a new discovery cut-off date, what date do you propose?

MR. WELZER: Well, Your Honor, they had proposed February 28th, and I think that will work in terms of dispositive motions being due or March 31st.

THE COURT: Thank you. Let me hear from SCSW, please.

MR. KAZIN: Yes, Your Honor. This is Andrew Kazin speaking, and I apologize that we had to bother Your Honor with this. We went for about a full year with absolutely no issues whatsoever and counsel on both sides have been 100 percent amicable with each other, so I apologize for this.

There was obviously a miscommunication. I did personally apologize to Mr. Welzer because he was already in California. We're looking now to move forward so we can get a resolution of this case for moving to trial on the merits. If we can go to mediation, we are ready to do so. But if Your Honor won't order it or they don't want to do it, we will do the

depositions. We would suggest possibly doing them by video. The only issue I want to bring to Your Honor's attention based on what Your Honor just indicated was that they have taken a position that we've waived the right to take their depositions and we of course would still want to take their depositions and that's where we stand, Your Honor.

THE COURT: Do you dispute that I have discretion to award the financial relief that they're seeking in connection with the cancelled depositions?

MR. KAZIN: I think Your Honor has the discretion to award whatever relief Your Honor believes is appropriate. We don't think it's warranted in this instance, especially given the fact that counsel was going out there and especially with respect to the preparation time for attorneys' fees. There's one thing with respect to travel costs. There's quite another with respect to attorneys' fees.

We attempted actually to reach a resolution. We didn't. We called this morning to even try and get the deposition situation

resolved, but it didn't work.

THE COURT: Okay. Thank you.

MR. WELZER: Your Honor, can I respond briefly?

THE COURT: Yes. Go ahead.

MR. WELZER: During this morning's call, one of SCSW's attorney, not the one who's speaking right now, made one proposal, that we take one of their depositions by video conferencing and they take one of ours by video conferencing. That's it. That's all that was on the table, a suggestion of doing things by video conferencing. And frankly, technology is great except when it doesn't work and we have never had much success with video conference depositions when we're taking them so we're not interested.

THE COURT: Okay. Well, thank you. Let me give you my ruling. First off, in connection with the cancellation of the depositions, I think it is appropriate and I hereby order that the Defendants pay Plaintiff nonrefundable costs which I understand from the letter to be $563.65 which I understand to be

the nonrefundable airfare for travel to Los Angeles.

I think that that is appropriate given that there was nothing unreasonable or imprudent for counsel to be traveling to Los Angeles on a Thursday for a deposition that was going to be held so he thought and had reason to think the following Monday given that the Defendants without explanation cancelled that deposition on the intervening Friday, I do think it's fair and reasonable and appropriate that the Plaintiff not have to suffer the costs of that nonrefundable fair, a trip that counsel represents and I accept he would not have taken but for his reasonable reliance on the fact that there was going to be a deposition on the Monday.

I don't think under the circumstances it is warranted for me to award the other relief sought by the Plaintiffs, specifically a little bit more than $5200 sought for attorneys' fees in connection with the eight hours of travel. Furthermore, in terms of how this case is going to move forward the

Plaintiff's request that Defendant produce Defendant's witnesses for the deposition here in Delaware is granted, and those depositions shall occur on dates that are agreeable to both parties and no later than February 28, 2017 which is now going to be the cut-off for fact discovery.

There is a presumption that the depositions will take place during the dates that Plaintiff has mentioned on the phone here either January 23rd to 27th or February 6th to 10th, but I'm going to rely on the parties' ability to work together which was well demonstrated for about a year in the case to ensure that you all can figure out exactly when to have those depositions here in Delaware.

I'm not going to decide today what remedy there would be in the unfortunate event that one or more of Defendant's witnesses do not actually show up for the deposition. I'm confident that if that were unfortunately to occur, that if the parties can't work out what the result should be as a result of that conduct, that Plaintiffs will file a timely

request for what they think is an appropriate relief and I will deal with it at that point.

I am going to permit the Defendants to take the depositions of the Plaintiff's witnesses. Should the Defendant wish to do so, and it sounds as if the Defendant does wish to do so, those depositions will need to occur on dates agreeable to both parties no later then February 28th. I think it would not be warranted to preclude Defendants from taking those depositions and having the opportunity in the extended discovery period to prepare its case.

Further, I'm not going to require that any of these depositions occur by video. Certainly, the parties are always free to work out that kind of accommodation with one another and the witnesses if they wish, but the rules provide as a default for inperson depositions and I don't see any reason to depart from that here.

And finally, in terms of mediation, that is an issue between all of you and Magistrate Judge Burke, I am pleased you

have another call scheduled with him in January and he has the full authority of the Court to handle that however he sees fit. To the extent I'm being asked to order somebody to do something with respect to mediation, I'm not going to do that. That's my ruling.

Any questions about any of that, Mr. Welzer?

MR. WELZER: No, Your Honor. Thank you.

THE COURT: And Mr. Kazin?

MR. KAZIN: No, Your Honor. Thank you.

THE COURT: Okay. Thank you all very much.

(The proceedings ended at 2:15 p.m.)

C E R T I F I C A T I O N

I, Taneha Carroll, Professional Court Reporter, certify that the foregoing is a true and accurate transcript of the foregoing proceeding.

I further certify that I am neither attorney nor counsel for, nor related to nor employed by any of the parties to the action in which this proceeding was taken; further, that I am not a relative or employee of any attorney or counsel employed in this case, nor am I financially interested in this action.

/s/Taneha Carroll
Taneha Carroll

Professional Reporter and Notary Public